UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE PRESERVE AT BOULDER HILLS LLC,<br>THE PRESERVE MANAGEMENT, LLC,<br>THE PRESERVE RANGE, LLC,<br>THE PRESERVE RANGE MANAGEMENT, LLC,<br>PRESERVE PROPERTY MANAGEMENT<br>COMPANY, LLC,<br><br>PLAINTIFFS<br><br>V.<br><br>COALITION INSURANCE SOLUTIONS, INC.,<br>SWISS RE CORPORATE SOLUTIONS<br>CAPACITY INSURANCE CORPORATION f/k/a NORTH<br>AMERICAN CAPACITY INSURANCE COMPANY,<br>PELEUS INSURANCE COMPANY,<br><br>DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No.: |

**NOTICE OF REMOVAL**

NOW COMES the Defendant, Peleus Insurance Company (hereinafter "Peleus" or "Defendant"), and respectfully gives notice of the removal of the above-captioned lawsuit from the Superior Court, Providence/Bristol County, in the State of Rhode Island, to the United States District Court for the District of Rhode Island, pursuant to 28 U.S.C. § 1332, 1441, and 1446.

In support of this Notice, Defendant states:

1. On information and belief, on or after July 27, 2026, the Plaintiffs, The Preserve at Boulder Hills, LLC, The Preserve at Boulder Hills LLC, The Preserve Management, LLC, The Preserve Range, LLC, The Preserve Range Management, LLC, and Preserve Property Management Company, LLC, (collectively "Plaintiffs"), filed suit against Defendant in Providence/Bristol Superior Court, seeking damages and equitable relief with regard to an insurance policy issued to Plaintiff, The Preserve at Boulder Hills, LLC by or on behalf of the defendants.

2. On or after August 3, 2026, Defendant received a copy of the Complaint that was served on Peleus' agent for service of process on August 3, 2026. A true and accurate copy is attached hereto as **Exhibit A**.
3. Plaintiffs' complaint seeks monetary damages in an amount exceeding $75,000.00.
4. Colony Insurance Company is the successor via merger to Peleus. Colony is incorporated in Nebraska, and its principle place of business is Chicago, Illinois.
5. On information and belief, each of the plaintiffs is a Rhode Island limited liability company with its principal place of business in Rhode Island.
6. On information and belief, The Preserve at Boulder Hills, LLC is a privately owned limited liability company, with the following members:

   Preserve Management, LLC
   Dr. William Beliveau
   Beliveau Family Financial, LLC
   Dr. Steven Colagiovanni
   Ronald Maggiacomo

7. On information and belief, Preserve Management, LLC is a privately owned limited liability company, with two members: PPM & Co., LLC and M.T.M. Development Corporation. On information and belief, PPM & Co., LLC is a privately owned limited liability company and is wholly owned by the Paul P. Mihailides Revocable Trust (the "Mihailides Trust"). On information and belief, the Mihailides Trust is a traditional trust such that its citizenship is determined by the citizenship of its trustee. On information and belief, the Trustee of the Mihailides Trust is Paul Mihailides, who is a citizen of the state of Rhode Island.
8. On information and belief, M.T.M. Development Corporation is a Rhode Island corporation with its principal place of business in Wyoming, Rhode Island.
9. On information and belief, Dr. William Beliveau is a citizen of the state of Rhode Island.

10. On information and belief, Beliveau Family Financial, LLC is a privately owned limited liability company, with Dr. William Beliveau as its member.
11. On information and belief, Dr. Steven Colagiovanni is a citizen of the state of Rhode Island.
12. On information and belief, Ronald Maggiacomo is a citizen of the state of Rhode Island.
13. On information and belief, The Preserve Range, LLC, is a Rhode Island limited liability company with M.T.M. Development Corp. as its manager.
14. On information and belief, The Preserve Range Management, LLC is a privately owned limited liability company and is wholly owned by PPM & Co., LLC, which as noted above is a Rhode Island citizen.
15. On information and belief, defendant, Coalition Insurance Solutions, Inc. is a New York corporation with its principal place of business in San Francisco, California.
16. On information and belief, defendant Swiss Re Corporate Solutions, is a Missouri corporation with its principal place of business in Kansas City, Missouri.
17. For the foregoing reasons, this action is removable under this Honorable Court's diversity jurisdiction Plaintiffs are Rhode Island residents, Defendants are residents of Illinois, New York and Missouri. And, the amount in controversy exceeds $75,000.00.
18. This Notice of Removal has been timely filed under 28 U.S.C. § 1446(b)(3) because it has been filed within thirty (30) days after receipt of a copy of a Summons and Complaint by the Defendant, of a pleading from which it may be ascertained that the case is one which is or has become removable.

WHEREFORE, Defendant, Peleus Insurance Company now removes this action currently pending in the Superior Court for Providence/Bristol County to the United States District Court for the District of Rhode Island.

The Defendant,
Peleus Insurance Company
By its Counsel,

***Thomas A. Pursley***

Thomas A. Pursley, #6230
Lynch & Lynch
45 Bristol Drive
South Easton, MA 02375
(508) 230-2500
tpursley@lynchlynch.com

10 Weybosset Street, Suite 301A
Providence, RI 02903

Dated: August 31, 2026

AFFIDAVIT OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Rhode Island, by using the CM/ECF system. I also served the following by U.S. Mail postage prepaid and by electronic mail to the following:

Marc DeSisto, Esq.
Jeffrey M. DeSisto, Esq.
DeSisto Law LLC
4 Richmond Square, Suite 500
Providence, RI 02906
marc@desistolaw.com
jeff@desistolaw.com

Bonnie Thompson, Esq.
Lavin Rindner Duffield, LLC
1717 K Street NW, Ste. 900
Washington, DC 20006
bthompson@lrd.law

Stephen Adams, Esq.
Henneous Carroll Lombardo, LLC
One Citizens Plaza
Providence, RI 02903
Sadams@hcllawri.com

Thomas A. Pursley

Dated: August 31, 2026 Thomas A. Pursley , BBO No.: 6230

# EXHIBIT A

CSC

**null / ALL**
**Transmittal Number: 34691927**
**Date Processed: 08/03/2026**

# Notice of Service of Process

**Primary Contact:** Kevin Lougachi
Argo Group US, Inc.
711 Broadway
Ste 400
San Antonio, TX 78215-1816

**Electronic copy provided to:** Austin King
Timothy Costello
Michele Henslee
Timothy Gotta

| | |
|---|---|
| **Entity:** | Colony Insurance Company<br>Entity ID Number 4817736 |
| **Entity Served:** | Colony Insurance Company |
| **Title of Action:** | The Preserve At Boulder Hills LLC vs. Coalition Insurance Solutions, Inc. |
| **Matter Name/ID:** | The Preserve At Boulder Hills LLC vs. Coalition Insurance Solutions, Inc. (19684518) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Superior Court, RI |
| **Case/Reference No:** | PC-2026-04123 |
| **Jurisdiction Served:** | Nebraska |
| **Date Served on CSC:** | 08/03/2026 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Desisto Law LLC<br>401-272-4442 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

Case Number: PC-2026-04123
Filed in Providence/Bristol County Superior Court
Submitted: 7/27/2026 2:07 PM
Envelope: 5773845
Reviewer: Alexandra R.

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

THE PRESERVE AT BOULDER HILLS LLC,
THE PRESERVE MANAGEMENT, LLC,
THE PRESERVE RANGE, LLC,
THE PRESERVE RANGE MANAGEMENT, LLC,
PRESERVE PROPERTY MANAGEMENT COMPANY, LLC,
*Plaintiff,*

v.

C.A. No. PC-2026-

COALITION INSURANCE SOLUTIONS, INC.,
SWISS RE CORPORATE SOLUTIONS
CAPACITY INSURANCE CORPORATION f/k/a NORTH
AMERICAN CAPACITY INSURANCE COMPANY,
PELEUS INSURANCE COMPANY,
*Defendants.*

## COMPLAINT

### I. PARTIES

1. The Preserve at Boulder Hills, LLC, The Preserve Management, LLC, The Preserve Range, LLC, The Preserve Range Management, LLC d/b/a/ THE SPORTING SHOPPE, and the Preserve Property Management Company, LLC (collectively, "Plaintiff") are limited liability companies formed under the laws of the State of Rhode Island, with its principal offices located at 87A Kingstown Road, Richmond, Rhode Island 02898.

2. Coalition Insurance Solutions, Inc. ("Coalition") is a corporation with its principal place of business at 1160 Battery Street, Suite 350, San Francisco, California 94111.

3. Upon information and belief, Swiss Re Corporate Solutions Capacity Insurance Corporation ("Swiss Re") merged with North American Capacity Insurance Company in or around 2024 and is headquartered at 1200 Main Street, Suite 800, Kansas City, Missouri 64105.

Case 1:26-cv-00610-JJM-PAS Document 1 Filed 08/31/26 Page 9 of 25 PageID #: 9

4. Peleus Insurance Company (a subsidiary of Argo Group/Brookfield Reinsurance) ("Peleus") maintains its home office at 1350 Aldrich Road, Lincoln, Nebraska 68510.
5. Coalition, Swiss Re, and Peleus are collectively referred to in this Complaint as "Defendants".

## II. JURISDICTION AND VENUE

6. Plaintiff brings this civil action in the Rhode Island Superior Court pursuant to the Court's general subject-matter jurisdiction over civil actions.
7. Personal jurisdiction exists over Defendants because they transacted business, issued or participated in issuing an insurance policy for risks located in Rhode Island, or otherwise purposefully availed themselves of conducting business in Rhode Island related to the events giving rise to these claims.

## III. GENERAL ALLEGATIONS

8. The Preserve Sporting Club & Resort ("The Preserve") is a luxury resort and master-planned community, offering the best outdoor experiences, restaurants, luxury accommodations and luxury homes in the United States.
9. The Preserve was once engaged in a contractual relationship with the Ocean House hotel in Watch Hill, RI, that spanned approximately March 2020 – June 2022, whereby the Ocean House had access to The Preserve's computer systems through a VPN to manage, among other things, The Preserve's reservation systems.
10. The Ocean House employed the use of hospitality property management software called Maestro. Maestro was installed on a single computer server that serviced both the Ocean House and The Preserve, as well as other properties within the Ocean House Collection.

11. The Maestro software was the "lifeblood" of The Preserve (and the Ocean House, for that matter), as it was utilized for accounting functions, reservation systems and a call-in center for all hospitality needs. The software included a database of all members of The Preserve and the Ocean House.

12. On or about August 15, 2021, a cyber incident occurred at the Ocean House.

13. It was later discovered that a malicious actor ("hacker") had successfully hacked into the Ocean House's virtual server.

14. The hacker encrypted the Ocean House's data, as well as The Preserve's data (through the VPN established between the Ocean House and The Preserve) and held it for ransom in a "malware attack."

15. Although upon discovery of the malware attack The Preserve shut down the VPN on its side, the damage had already been done. In addition to its inability to access the reservation system, its data was compromised. Among the data it lost was guest contact information, as well as all of the guest preferences that were stored in the hospitality management software. That data was never restored to its original form and was only provided to The Preserve from the Ocean House through litigation in a separate issue.

16. Following the malware attack, prospective guests to The Preserve were treated to an experience not up to luxury-resort standards due to the interruption and disfunction of the reservation systems.

17. At the time of the breach, Ocean House's insurance carrier hired an IT recovery team to attempt to recover data and software programs that affected both properties.

18. Plaintiff's IT vendors, MDB and Charles IT, were permitted to monitor the recovery efforts conducted by the Ocean House team.

19. The malware attack caused an interruption of access to email, customer service, bookings, and other services for Plaintiff. During the period of the attack, Plaintiff was forced to shut down emails and other communication means due to uncertainty about the scope of the intrusion.

20. Plaintiff did not initially seek breach assistance from Defendant, believing that Ocean House's cyber carrier was handling much of the response.

21. Plaintiff used its own IT vendors to monitor recovery efforts and mitigate loss.

22. Plaintiff's business model relies on guest visits and overnight stays, which lead to club memberships and home purchases on the property.

23. The Maestro reservation software is used to manage guest reservations, activities, and customer services or events for Plaintiff.

24. The disruption impaired advertising-driven bookings, which rely on email, telephone, or online reservations supported by Maestro.

25. Plaintiff experienced negative goodwill, bad public relations, and a tarnished reputation due to poor service, communication difficulties, and overall bad guest experiences during the incident.

26. Plaintiff submitted a proof of loss statement on March 30, 2023, seeking $15,664,410 for business interruption loss and extra expense.

27. The proof of loss referenced additional information, including a detailed calculation of business interruption loss and extra expense with reference to "Preserve claim file_2022_12.14.xlsx" from forensic accountant firm BDO USA, P.C. hired by Plaintiff, and based the claim on sales, memberships, and operations.

28. The property damage claim included $293,507.88 in invoices for recovery and security efforts, with the largest invoice from Federal Securities for $156,800.

29. When Plaintiff signed the insurance application in February 2021, the revenue projections were based on the impact of COVID-19 closures and did not anticipate the business rebound and new revenue opportunities that later arose.

30. Plaintiff struggled to assemble financial numbers through December 2021 and March of the following year, citing reservation system glitches and an incomplete loss picture, and later engaged BDO to assist with the claim.

31. The cyber insurance policy issued to Plaintiff provided coverage for business interruption and extra expenses, with a policy limit of $2,000,000.

32. The policy period for the relevant coverage was February 9, 2021 through April 20, 2022.

33. The policy required Plaintiff to complete and sign a written, detailed, and affirmed proof of loss within 90 days after discovery of the computer systems failure, unless extended in writing by the underwriters, and Plaintiff's proof of loss was submitted on March 30, 2023.

34. On August 18, 2021, days after the malware incident, Plaintiff provided Defendant with written notice of the cyber incident and the resulting business interruption losses and downstream impacts to Plaintiff's operations.

35. Beginning on September 21, 2021, Plaintiff, and its agents, repeatedly requested that Defendant assist Plaintiff in quantifying its business interruption losses or retain a forensic accountant to do so.

36. On September 24, 2021, Defendant advised Plaintiff's broker that Defendant would need to retain a forensic accountant to assist with the loss evaluation. Defendant took

approximately nineteen (19) months to procure a forensic accountant, forcing Plaintiff to pay BDO itself.

37. Because Defendant failed to provide the promised forensic accounting assistance, Plaintiff retained BDO USA, P.C., at its own expense, to calculate its business interruption losses and extra expenses.

38. Prior to late March 2023, during the adjustment of the claim, Defendant did not provide Plaintiff with a Proof of Loss form or advise Plaintiff that Defendant intended to enforce the Policy's ninety (90) day Proof of Loss requirement.

39. Defendant's representatives expressly advised Plaintiff's broker that issues concerning Plaintiff's losses could be revisited at a later date and further represented that, if the claim were administratively closed, it could be reopened.

40. When Plaintiff later advised Defendant that it had retained BDO USA, P.C. and requested that the claim be reopened, Defendant reopened or continued to adjust the claim without asserting that any Proof of Loss deadline had expired.

41. Plaintiff's broker also requested an extension of the Proof of Loss period. Defendant's representatives verbally advised that an extension was not an issue and did not advise Plaintiff that Defendant intended to deny coverage based upon timeliness.

42. Throughout the claim investigation Defendant continued requesting information concerning Plaintiff's damages, corporate structure, financial records, and business interruption calculations while never advising Plaintiff that it considered the claim barred by any timing requirement.

43. Plaintiff reasonably relied upon Defendant's representations, omissions, and course of conduct in continuing to investigate and quantify its losses rather than immediately submitting a formal Proof of Loss.

44. Had Defendant advised Plaintiff that it intended to rely upon the ninety (90) day Proof of Loss provision, Plaintiff would have immediately submitted a Proof of Loss, sought a written extension from the underwriters, or otherwise preserved its rights under the Policy.

45. Plaintiff's insurance application, signed in February 2021, listed $1,500,000 in expected revenue over the next year, and a renewal application signed in February 2022 also listed $1,500,000 in anticipated revenue over the next year.

46. Defendant requested detailed information on the corporate structure of the various impacted entities and detail as to what claimed amounts are actually claimed as loss to an insured, and requested information regarding the basis for Plaintiff's representations in its insurance applications concerning expected revenue in prolonged pre-suit discovery.

47. Defendant has wrongly determined that there is no covered loss for Plaintiff under the Policy.

## IV. CAUSES OF ACTION

### COUNT I – BREACH OF CONTRACT

48. Plaintiff realleges and incorporates by reference paragraphs 1 through 47 as if set forth fully herein.

49. Plaintiff was issued a cyber insurance policy from Defendant providing coverage for business interruption and extra expenses during the policy period of February 9, 2021, through April 20, 2022, with a $2,000,000 limit.

50. A covered malware event disrupted Plaintiff's operations, causing interruption of access to email, customer service, bookings, and other services, and resulting in losses claimed as business interruption and extra expense.

51. Plaintiff submitted an affirmed proof of loss with supporting documentation for business interruption and extra expense on March 30, 2023.

52. Defendants breached the policy by failing to pay covered losses in accordance with the policy's terms and conditions.

53. Plaintiff suffered $3,017,209 in lost initiation fees, which are booked at Preserve at Boulder Hills, LLC.

54. Those membership losses were sustained by The Preserve at Boulder Hills, LLC, the named insured.

55. Defendant's requests for additional information regarding affiliated entities were immaterial because the named insured's own covered losses independently exhausted the available limits.

56. Defendant nevertheless delayed payment despite possessing information demonstrating covered losses in excess of policy limits.

57. As a direct and proximate result of Defendants' breach, Plaintiff suffered damages, including but not limited to business interruption losses and extra expenses, in an amount to be proven at trial, subject to policy terms and limits.

## COUNT II – DECLARATORY JUDGMENT

58. Plaintiff realleges and incorporates by reference paragraphs 1 through 57 as if set forth fully herein.

59. An actual, justiciable controversy exists between Plaintiff and Defendants regarding the parties' rights and obligations under the cyber insurance policy, including the scope of coverage for business interruption, extra expense, and related losses arising from the August 2021 malware event.

60. Plaintiff seeks a declaration that the Policy affords coverage for its claimed losses, that any conditions precedent have been satisfied or excused, and that Defendant is obligated to indemnify Plaintiff for covered losses.

## COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING/BAD FAITH

61. Plaintiff realleges and incorporates by reference paragraphs 1 through 60 as if set forth fully herein.

62. Defendant owed Plaintiff an implied covenant of good faith and fair dealing arising from the insurance policy and the insurer–insured relationship.

63. Defendant breached that covenant by unreasonably delaying, denying, or failing to fully and fairly evaluate and pay Plaintiff's covered claims, and by placing their financial interests ahead of the insured's rights under the policy.

64. Defendant failed to conduct a prompt, fair, and objective investigation of Plaintiff's claim.

65. Defendant delayed adjustment of the claim while repeatedly requesting additional information despite already possessing sufficient information to determine that Plaintiff had sustained covered losses exceeding the Policy limits.

66. Defendant represented that it would retain a forensic accountant but failed to do so, forcing Plaintiff to incur substantial expense in retaining BDO USA, P.C.

67. Defendant continued to investigate Plaintiff's claim for an extended period without advising Plaintiff that it considered the claim untimely.

68. Defendant thereafter denied or sought to deny coverage based upon a purported Proof of Loss deadline despite previously representing that the claim could be reopened and that timing issues were not a concern.

69. As a result, Plaintiff suffered damages, including consequential damages, in an amount to be proven at trial.

**COUNT IV – UNFAIR CLAIMS PRACTICES (AGAINST ALL DEFENDANTS)**

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 69 as if set forth fully herein.

71. Defendant engaged in unfair claim settlement practices in connection with Plaintiff's claim.

72. Plaintiff seeks all remedies available under Rhode Island law.

**COUNT V – ESTOPPEL**

73. Plaintiff realleges and incorporates paragraphs 1 through 72 as if set forth fully herein.

74. Defendant had actual knowledge that Plaintiff had suffered a covered cyber event and that Plaintiff was attempting to quantify complex business interruption losses.

75. Defendant affirmatively represented through its adjusters and claim representatives that the claim could be reopened and that issues relating to the amount of loss could be addressed later.

76. Defendant failed to provide Plaintiff with a Proof of Loss form.

77. Defendant failed to disclose that Defendant intended to enforce the Policy's ninety (90) day Proof of Loss provision.

78. Defendant accepted additional documentation, continued requesting information, discussed reopening the claim, and continued adjusting the claim long after expiration of the alleged deadline.

79. Plaintiff reasonably relied upon Defendant's representations, omissions, and conduct.

80. As a direct result of that reliance Plaintiff incurred substantial accounting expenses, delayed submitting its completed Proof of Loss while quantifying damages, and refrained from taking additional action to preserve its rights.

81. Defendant is equitably estopped from asserting the ninety (90) day Proof of Loss provision or any alleged untimeliness as a defense to coverage.

82. As a result, Plaintiff suffered damages, including consequential damages, in an amount to be proven at trial.

**COUNT VI – WAIVER**

83. Plaintiff realleges and incorporates paragraphs 1 through 82 as if set forth fully herein.

84. Defendant accepted notice within eight (8) days of the loss.

85. Defendant repeatedly communicated regarding adjustment of the claim.

86. Defendant advised Plaintiff and/or its agents that the claim could be reopened.

87. Defendant failed to provide a Proof of Loss form to Plaintiff.

88. Defendant accepted additional documentation from Plaintiff for the furtherance of pursuing the claim.

89. Defendant never asserted untimeliness of Plaintiff until much later in the process, as of at least March 10, 2023.

90. Defendant, therefore, intentionally or impliedly waived strict compliance with the Proof of Loss provision.

## V. PRAYER FOR RELIEF

91. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

a) Compensatory damages for covered business interruption loss and extra expense in an amount to be determined at trial, subject to policy terms and limits;

b) Compensatory damages for covered property damage and recovery/security costs, including invoices totaling at least $293,507.88, in an amount to be determined at trial, subject to policy terms and limits;

c) A declaration of the parties' rights and obligations under the insurance policy consistent with the allegations above;

d) Attorneys' fees, expert fees, and costs as permitted by Rhode Island law and/or the insurance policy;

e) Pre-judgment and post-judgment interest as permitted by law; and

f) Such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Plaintiff,
By its Attorney,

*/s/ Marc DeSisto*
Marc DeSisto, Esq. (#2757)
*/s/ Jeffrey M. DeSisto*
Jeffrey M. DeSisto, Esq. (#10561)
DeSisto Law LLC
4 Richmond Square, Suite 500
Providence, RI 02906
(401) 272-4442
marc@desistolaw.com
jeff@desistolaw.com

CERTIFICATE OF SERVICE

I hereby certify that the within document has been electronically filed and served with the Court on the 27th day of July 2026, and is available for viewing and downloading form the ECF system.

/s/ *Jeffrey M. DeSisto*

## COLONY INSURANCE COMPANY

Thu Jul 30 13:16:02 2026

**SOS Account Number**
2409180033
**Status**
Active

**Principal Office Address**
No address on file
**Registered Agent and Office Address**
CSC-LAWYERS INCORPORATING SERVICE COMPANY
233 SOUTH 13TH ST., STE. 1900
LINCOLN, NE 68508

**Nature of Business**
Not Available
**Entity Type**
Insurance Company
Qualifying State: NE
**Date Filed**
Sep 03 2024

### Filed Documents

To purchase copies of filed documents check the box to the left of the document code. If no checkbox appears, contact the Secretary of State's office to request the document(s).

| | Document | Date Filed | Price |
|---|---|---|---|
| ☐ | Articles of Domestication - In | Sep 03 2024 | $1.80 = 4 page(s) @ $0.45 per page |
| ☐ | Merger | Jul 01 2025 | $2.25 = 5 page(s) @ $0.45 per page |
| ☐ | Change of Agent or Office | Jul 29 2025 | $0.45 = 1 page(s) @ $0.45 per page |

### Good Standing Documents

To purchase documents attesting to the entity's good standing check the box next to the document title.

- If you need your Certificate of Good Standing Apostilled or Authenticated for use in another country, you must contact the Nebraska Secretary of State's office directly for information and instructions. Documents obtained from this site cannot be Apostilled or Authenticated.

☐ **Online Certificate of Good Standing with Electronic Validation**

**$6.50**

This certificate is available for immediate viewing/printing from your desktop. A Verification ID is provided on the certificate to validate authenticity online at the Secretary of State's website.

☐ **Certificate of Good Standing - USPS Mail Delivery**

**$10.00**

This is a paper certificate mailed to you from the Secretary of State's office within 2-3 business days.

Select All | Select None

⬆ Back to Top

STATE OF NEBRASKA
DEPARTMENT OF INSURANCE

FEB 26 2025

FILED

BEFORE THE DEPARTMENT OF INSURANCE
STATE OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF THE MERGER OF PELEUS INSURANCE COMPANY, a Nebraska domiciled insurer, with and into COLONY INSURANCE COMPANY a Nebraska domiciled insurer | ) ) ) ) ) ) | CAUSE NO. C-3026<br><br>ORDER<br>APPROVING MERGER |

Pursuant to Neb. Rev. Stat. § 44-224.04, Argonaut Insurance Company ("Argonaut") has filed for Approval of Merger to merge Peleus Insurance Company ("Peleus"), a Nebraska domiciled insurer, with and into Colony Insurance Company ("Colony"), a Nebraska domiciled insurer. After this merger, the ultimate controlling party will remain unchanged.

After review of the filings, correspondence, and information provided to the Nebraska Department of Insurance ("Department"), the Director hereby approves the merger, and assigns, concludes, and orders as follows:

## FINDINGS OF FACT

1. On January 28, 2025, Argonaut applied to the Director of Insurance for approval of the merger. The Department's review of the proposed merger is made pursuant to Neb. Rev. Stat. § 44-224.04.

2. Peleus is a Nebraska domestic property and casualty insurer initially licensed to do business in the State of Nebraska on October 7, 2024.

3. Colony is a Nebraska domestic property and casualty insurer licensed to do business in the State of Nebraska on November 5, 2024.

4. Under the proposed merger Peleus will merge with and into Colony, the separate existence of Peleus will cease, and Colony will be the surviving insurer possessing all of the rights,

privileges, powers, franchises and interests, and being subject to all of the restrictions, disabilities, duties, debts and liabilities of Peleus. All property and obligations of Peleus shall be assumed by Colony.

5. The Board of Directors of Peleus and Colony approved the merger on January 27, 2025.

6. Peleus and Colony entered into an Agreement and Plan of Merger on January 27, 2025.

7. The proposed effective date for the merger is set to coincide with the Director's approval of the plan of merger.

CONCLUSIONS OF LAW

1. The Department of Insurance has jurisdiction over the subject matter and parties to this proceeding as authorized under Neb. Rev. Stat. § 44-224.04.

2. Argonaut filed the required documents with the Department including an Agreement and Plan of Merger; the merger filing fee; a resolution adopted by the Board of Directors of Peleus, approving the merger; a resolution adopted by the Board of Directors of Colony approving the merger; and Articles of Merger.

3. On the basis of the information filed with the Department, there is sufficient reason to believe the interests of the policyholders of Peleus will be protected under the proposed merger.

ORDER

IT IS THEREFORE ORDERED, there being no evidence to indicate that the merger of Peleus with and into Colony is contrary to law or to the best interest of the policyholders of the insurer, the proposed merger is hereby approved. Colony shall notify the Department of the date

the Articles of Merger are filed with the Nebraska Secretary of State's Office showing the effective date of the merger.

Dated this 26 day of February, 2025.

STATE OF NEBRASKA
DEPARTMENT OF INSURANCE

ERIC DUNNING
Director of Insurance

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this Order was served upon Ann Frohman, by email to ann@frohmanlaw.com, and by regular mail to 1350 Aldrich Road, Lincoln, NE 68510.

Shelly Stoie